IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

KEVIN SNULLIGAN,

                Defendant.

Case No. 99 CR 561-5

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Court grants Defendant Kevin Snulligan's Motion for a Sentencing Reduction (Dkt. No. 310). The Court reduces Snulligan's sentence to time served and waives the remaining balance of his $15,000 fine. All other conditions of his sentence remain intact.

## I.  BACKGROUND

In November 1999, the Government charged Snulligan with four counts in a six-count indictment. Count One charged Snulligan with conspiracy to possess with intent to distribute and conspiracy to distribute five kilograms or more of cocaine and a quantity of marijuana in violation of 21 U.S.C. § 846. (Indictment, Dkt. No. 29.) Count Four charged Snulligan with possession with intent to distribute approximately 1,218 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). (*Id.*) Count Five charged Snulligan with possession with intent to distribute approximately 514 grams of cocaine base ("crack") in violation of 21 U.S.C.

§ 841(b)(1)(A)(iii). (*Id.*) Count Six charged Snulligan with possession with intent to distribute marijuana in violate of 21 U.S.C. § 841(a)(1). (*Id.*)

In May 2000, a jury convicted Snulligan of Counts Four, Five, and Six. (Verdict Minute Order, Dkt. No. 153.) The Government dismissed Count One, the conspiracy count, before trial. (Dismissal Minute Order, Dkt. No. 150.) Neither the jury verdict form nor the minute order regarding the verdict indicate that the jury made findings about the drug quantities possessed by Snulligan. (*See generally* Verdict, Dkt. No. 152; Verdict Minute Order, Dkt. No. 153.)

A Presentence Investigation Report ("PSR") found Snulligan responsible for the full quantity of drugs charged in the indictment. (PSR at 4, Dkt. No. 267.) As a result, the PSR determined Snulligan's base offense level to be 36. (*Id.* at 7.) Snulligan also received a two-level enhancement for obstruction of justice, and the PSR determined Snulligan to be a career offender. (*Id.* at 6–7.) However, because Snulligan's offense level under the drug guidelines was higher than it would have been under the career offender guidelines, this label ultimately did not affect the PSR's calculations (*Id.*) Snulligan's guidelines range was 360 months to life in prison. (*Id.* at 19.)

On September 11, 2000, Judge James Holderman sentenced Snulligan to concurrent terms of 480 months in prison on Counts Four and Five and a consecutive term of 60 months in prison on Count Six, totaling 540 months in prison. (Sentencing Order at 1, Dkt. No. 198.) After sentencing, Snulligan appealed, challenging the sufficiency of the evidence and the district court's denial of his motion to suppress. *See United States v. Snulligan*, 2001 WL 674620 (7th Cir. June 12, 2001). Snulligan's co-defendant challenged his sentence for failure to comply with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but Snulligan did not. *Snulligan*, 2001 6674620, at *1. The Seventh Circuit recognized the potential error but found it to be harmless because "both Snulligan and [his co-defendant] Rivera were convicted of multiple counts, and each was sentenced to fewer than 240 months per count of conviction." *Id.* Ultimately, the Seventh Circuit affirmed the conviction. *Id.*

In 2008, Snulligan filed a motion seeking a sentence reduction pursuant to 18 U.S.C. § 3582. (§ 3582 Mot., Dkt. No. 250.) Judge Holderman denied the motion because the amendments to the sentencing guidelines cited by Snulligan would not have affected his guideline range given his status as a career offender. (Opinion at 5-6, Dkt. No. 255.) The Seventh Circuit affirmed the ruling on appeal. *United States v. Snulligan*, 2012 WL 2336251 (7th Cir. June 20, 2012). Since then, Snulligan filed additional motions seeking

a sentence reduction based on other retroactive changes to the guidelines—all of which were denied. (*See, e.g.*, Dkt. Nos. 300 & 306.)

In 2018, Snulligan was charged in the Eastern District of Arkansas with possessing marijuana and tobacco in 2016 while he was in custody at FCC Forest City. *See United States v. Snulligan*, 17CR134 (E.D. Ark. Mar. 28, 2018). Snulligan pleaded guilty to possessing marijuana in violation of 18 U.S.C. § 1791(a)(2) and was sentenced to 18 months in custody to run consecutive to the time that he is currently serving for this case. *Id.* at Dkt. No. 24.

Snulligan has been in custody for 21 years and his estimated release date is August 29, 2040. He now moves the Court to reduce his sentence pursuant to the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act").

## II.  LEGAL STANDARD

In 2010, Congress passed the Fair Sentencing Act, which reduced sentencing disparities between offenses involving crack and powder cocaine. Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("Fair Sentencing Act"). The First Step Act effectively makes the provisions of the Fair Sentencing Act retroactive. Section 404 of the First Step Act states, in relevant part:

> (a) DEFINTION OF COVERED OFFENSE. In this section, the
> term "covered offense" means a violation of a Federal

criminal statute, the statutory penalties for which were
modified by section 2 or 3 of the Fair Sentencing Act of
2010 (Public Law 111-220; 124 Stat. 2372), that was
committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED. A court that
imposed a sentence for a covered offense may, on motion
of the defendant, the Director of the Bureau of Prisons,
the attorney for the Government, or the court, impose a
reduced sentence as if sections 2 and 3 of the Fair
Sentencing Act of 2010 (Public Law 111-220; 124 Stat.
2372) were in effect at the time the covered offense was
committed.

First Step Act § 404. Relief under the First Step Act is
discretionary. *Id.* § 404(c) ("Nothing in this section shall be
construed to require a court to reduce any sentence pursuant to
this section.") "A judge considering a motion for a reduced
sentence under the First Step Act is faced with two questions.
First, *may* the court reduce the sentence? And second, *should* the
court reduce the sentence?" *United States v. Shaw*, 957 F.3d 734,
736 (7th Cir. 2020).

### III. DISCUSSION

The Government answers both questions with a resounding "No."
First, the Government argues that Snulligan's Count Five
conviction for violating 21 U.S.C. § 841(b)(1)(A)(iii) is not a
"covered offense" under the First Step Act. Second, the Government
argues the nature and circumstances of the crime and Snulligan's

disciplinary record while in custody weigh against any sentence reduction. The Court addresses these arguments as follows.

### A.    Eligibility: "Covered Offense"

The First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act § 404(a). As relevant here, Section 2 of the Fair Sentencing Act modified the penalties for 21 U.S.C. § 841(b)(1)(A) and (B) offenses involving crack. Specifically, the statutory threshold in § 841(b)(1)(A)(iii) for a sentence of at least 10 years and up to life in prison is now 280 grams or more of crack. 21 U.S.C. § 841(b)(1)(A)(iii) (2018). At the time of Snulligan's jury trial and sentencing, that statutory threshold was 50 grams or more of crack. 21 U.S.C. § 841(b)(1)(A)(iii) (2000).

Both parties acknowledge *United States v. Shaw*, 957 F.3d at 738–40. In that case, the defendants were convicted under statutes covering crack offenses—21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii). *Id.* at 739. And the Seventh Circuit found the defendants' offenses to be "'covered offenses' under the plain language of the First Step Act because the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations." *Id.* In making its finding, the Seventh Circuit stated, "that the

- 6 -

statute of conviction alone determines eligibility for First Step Act relief." *Id.* The Court held as such even though the quantity of crack involved in each of the defendants' individual offenses exceeded the modified quantities. *See id.* at 738 (finding Shaw's offense involved 33.8 grams of crack and Robinson's offense involved 32.7 grams of crack, both exceeding the 28-gram threshold and Grier's offense involved 2.91 kilograms of crack and Foulks's offense involved 8.4 kilograms of crack, both exceeding the 280-gram threshold). "[W]hether an offense is covered simply depends on the statute under which a defendant was convicted." *Id.* at 739.

The Government attempts to distinguish *Shaw*, pointing out that "the drug weight that triggers the revised statutory penalties was alleged in [Snulligan's] indictment." (Resp. at 6, Dkt. No. 322.) Yet the indictment does not establish that the jury found those specific quantities beyond a reasonable doubt. *See United States v. Mitchell*, No. 06 CR 723-2, 2020 WL 1139245, at *3 (N.D. Ill. Mar. 9, 2020) ("Only quantities charged in the indictment **and** either expressly proven to a jury beyond a reasonable doubt or admitted in a guilty plea can have" the effect of increasing a mandatory minimum) (citing *United States v. Williams*, 402 F. Supp. 3d 442, 449 (N.D. Ill. 2019)); *see also Shaw*, 957 F.3d at 735 ("To determine whether a defendant is eligible for a reduced sentence under the First Step Act, a court needs to look only at a

defendant's statute of conviction, not to the quantities of crack involved in the offense.") In Snulligan's case, the jury made no finding as to any specific drug quantities and was instructed to return a guilty verdict so long as it concluded that Snulligan possessed a "measurable quantity" of crack. (Jury Instructions at 18, Dkt. No. 151.)

The Court declines, as it has many times before, to impose a mandatory minimum based on a drug quantity referenced solely in an indictment, PSR, or at sentencing. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013) ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."); *Williams*, 402 F. Supp. 3d at 448 ("Although *Alleyne* is not available retroactively . . . Congress knew that courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing. Congress would not have expected federal courts to then double-down on those unconstitutional findings in applying the First Step Act.") In Snulligan's case, there is not a finding beyond a reasonable doubt as to any specific drug quantity. (*See generally* Verdict, Dkt. No. 152; Verdict Minute Order, Dkt. No. 153.) Accordingly, the Court follows the Seventh Circuit's directives in *Shaw* and finds that the statute Snulligan violated, 21 U.S.C. § 841(b)(1)(A)(iii), is one for which the statutory penalties were

modified under the Fair Sentencing Act. Snulligan's offense is "covered" under the First Step Act, and he is eligible for a sentence reduction.

## B.  Discretionary Considerations

Next, the Court considers whether it should reduce Snulligan's sentence. In doing so, the Court "may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act." *United States v. Hudson*, 967 F.3d 605, 611 (7th Cir. 2020). "These factors include different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics." *Id.* at 612. The Court considers these in conjunction with the 18 U.S.C. § 3553(a) sentencing factors "to determine whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a)." *Id.* at 609.

Snulligan presents three general reasons to reduce his sentence: (1) intervening changes in the law and sentencing policy regarding the punishment for crack offenses; (2) his health, specifically his vulnerability to COVID-19; and (3) his rehabilitation efforts, release plan, and family support. In response, the Government argues the nature and circumstances of the Snulligan's underlying crime and his disciplinary record while in custody weigh against any sentence reduction. The Government

also claims that several of Snulligan's arguments "would more properly be considered in the context of motions for relief under different statutes," like 18 U.S.C. § 3582(c)(1), as amended by the First Step Act § 603, and 28 U.S.C. § 2255. (Resp. at 8–9.) The Court considers these arguments, and ultimately concludes that a sentence reduction is appropriate.

First, Snulligan asks the Court to consider changes in the law and sentencing policy for crack offenses since his sentencing in 2000. A district court must "undertake a 'complete review'" of a First Step Act motion. *Shaw*, 957 F.3d at 743 (citing First Step Act § 404(c)). This requirement "suggests a baseline of process that includes an accurate comparison of the statutory penalties—and any resulting change to the sentencing parameters—as they existed during the original sentencing and as they presently exist." *United States v. Corner*, 967 F.3d 662, 665 (7th Cir. 2020). Indeed, "today's Guidelines may reflect updated views about the seriousness of a defendant's offense or criminal history." *Shaw*, 957 F.3d at 742.

Snulligan's guidelines range at his sentencing in 2000 was 360 months to life in prison. (PSR at 19.) Snulligan's range recalculated under today's guidelines is 210 to 262 months in prison. (Mot. at 8, Dkt. No. 310.) Snulligan supports his revised guidelines range on three separate grounds. First, Snulligan

- 10 -

states he does not, and never did, qualify as a career offender because the PSR mistakenly listed a conviction for simple possession as a distribution offense. Second, Snulligan states that the other predicate conviction no longer qualifies because the state statute of conviction is broader than the guidelines definition of "controlled substance offense." Finally, Snulligan states that, even if the Court continued to apply the career offender guideline, *Apprendi* lowers his base offense level because the drug quantities in his case were never proven to a jury beyond a reasonable doubt.

The Government does not challenge the accuracy of Snulligan's new guidelines calculation. Instead, it contends that Snulligan's career offender status and *Apprendi* arguments should be construed as an improper successive habeas petition. Beyond merely concluding that none of Snulligan's arguments "have any legal merit," (Resp. at 10), the Government does not explain why Snulligan's arguments are improper at this stage of a First Step Act motion nor does it cite any supporting authority. The Court will not entertain such undeveloped and conclusory arguments. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Thus, the

Court accepts Snulligan's revised guidelines range of 210 to 262 months in prison.

Snulligan advances his guidelines range arguments further, advocating that the Court should substitute a 1:1 crack to cocaine ratio for the current 18:1 ratio to calculate his new guidelines range. If the Court adopted such a ratio, it would reduce Snulligan's revised guidelines range of 210 to 262 months to 120 to 150 months. The Court agrees that the present 18:1 ratio is too great but disagrees with the adoption of 1:1 ratio. Regardless—as Snulligan admits, see Mot. at 14—this point is largely academic because Snulligan's 269 months served already exceeds the high-end of his revised guideline range. Accordingly, the Court will refrain from considering theoretical sentences based on Snulligan's call to equity.

Second, Snulligan argues that his health and susceptibility to serious complications should he contract COVID-19 while in prison weigh in favor of a sentence reduction. In response, the Government argues this point is better raised in a motion for compassionate release under 18 U.S.C. § 3582(c)(1), as amended by the First Step Act § 603. But Snulligan's health is a factor relevant to the Court's renewed § 3553(a) analysis. See § 3553(a)(2)(D) ("The need for the sentence imposed to provide the

defendant with needed . . . medical care"). Thus, the Court will consider it as part of its overall discretionary analysis.

Unfortunately, COVID-19 is present in several Bureau of Prisons ("BOP") facilities. *See* BOP, *COVID-19 Coronavirus*, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Sept. 23, 2020). Prisons by their very nature are communal, making the containment, management, and eradication of a highly contagious virus a particularly difficult feat. It is therefore unsurprising that the facility where Snulligan is incarcerated, USP Victorville is struggling with a COVID-19 outbreak. At the time of this opinion, 7 inmates and 8 staff are COVID-19 positive, with 125 inmates and 11 staff having already recovered from the virus. BOP, *COVID-19 Coronavirus*, *COVID-19 Cases*, https://www.bop.gov/coronavirus (last visited Sept. 23, 2020).

Snulligan's health is poor. He suffers from cardiovascular issues like bradycardia, sickle cell trait, and hyperlipidemia (*See* BOP Med. Records at 8–9, Mot., Ex. E, Dkt. No. 309.) He also suffers from and takes daily medications for hypertension—one of the conditions the CDC identifies as potentially putting an individual "at an increased risk for severe illness from COVID-19." (*Id.* at 19.) CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions

/people-with-medical-conditions.html (last updated Sept. 11, 2020). The Court acknowledges that, even if it grants a reduction, Snulligan would not be immediately released from custody because he must serve the pending 18-month sentence for possession from the Eastern District of Arkansas. That pending sentence, however, does not change the fact that Snulligan's poor health puts him at an increased risk of severe illness should he contract COVID-19 while in prison. Ultimately, this factor weighs in Snulligan's favor.

Snulligan also argues that his post-sentencing conduct and conditions, including rehabilitation efforts, proposed release plan, and family support, weigh in favor of a sentence reduction. The Government contests this point, arguing the nature and circumstances of the underlying crime and Snulligan's disciplinary record while in custody weigh against any sentence reduction. Post-sentencing rehabilitation and conduct "may be relevant to § 3553(a) factors a court may wish to consider when determining whether to 'impose a reduced sentence.'" *Shaw*, 957 F.3d at 741 (citing First Step Act § 404(b)). In fact, post-sentencing conduct is "plainly relevant to the history and characteristics of the defendant; pertinent to the need for the sentence imposed; and may critically inform a sentencing judge's overarching duty under § 3553(a) to impose a sentence sufficient, but not greater than necessary, to

comply with the sentencing purposes set forth in §3553(a)(2)." *Id.*
(citing *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting
18 U.S.C. §§ 3553(a))) (internal quotations omitted).

While in prison, and especially in the last ten years,
Snulligan has worked to better himself and pursue his education.
He provides the Court with a record of classes taken over the past
twenty-one years, including courses on a multitude of topics (anger
management, mental health, physical health, business, life skills,
GED essentials like math, etc.) and vocational training classes.
(*See* Education Data, Mot., Ex. F, Dkt. No. 310-6.) The Government
responds that Snulligan's extensive disciplinary record indicates
"that he is not a changed man." (Resp. at 8.) In support, the
Government highlights what it believes to be the most egregious
disciplinary infractions, including: possession of alcohol (June
2019), possession of a cell phone (June 2018), possession of
tobacco and marijuana (November 2016), threatening other inmates
(April 2011), gambling (May 2009), and common area possession of
an eight-inch long piece of sharpened metal (July 2007). (*See
generally* Disciplinary Record, Resp., Ex. A, Dkt. No. 323.) But
Snulligan has already been punished for these incidents via the
loss of certain privileges like commissary and phone access, the
payment of fines, and most seriously, the imposition of an 18-
month sentence to be served consecutively with this sentence for

- 15 -

his November 2016 possession offense. *See United States v. Snulligan*, 17CR134 (E.D. Ark. Mar. 28, 2018) at Dkt. No. 24. All these violations were non-violent, and none warrant another two decades in prison. The Court also notes that Snulligan has been in custody since July 26, 1999. (PSR at 1.) As such, the length of his disciplinary record, although far from perfect, comports with the length of his incarceration.

The Government emphasizes Snulligan's criminal history. While Snulligan's conviction was for a non-violent drug offense, the Government identifies three incidents from around the same time that it argues highlight Snulligan's "violent tendencies." (Resp. at 7.) First, in July 1999, law enforcement recovered a firearm and ballistics vest along with the narcotics that were charged in the counts of conviction. (*Id.*) Second, before his arrest, Snulligan attempted to have his co-defendants arrange for a "hitman" from Mexico to help Snulligan collect a drug debt. (*Id.*) Finally, Snulligan had his brother intimidate someone who cooperated with the Government. (*Id.*) These incidents are certainly serious. There is nothing in the record, however, to suggest that anyone was injured. Also, each incident seems to relate to the offense for which Snulligan was convicted over twenty years ago. Snulligan is now 47 years old—an age at which recidivism is less likely.

Snulligan's history and characteristics no longer call for imprisonment. The Court is optimistic that Snulligan has been adequately deterred and can lead a law-abiding life upon release. Snulligan himself has said: "I've watched life move on without me and it hurts like no words can describe. I fear spending the next twenty seven years in jail or dying in jail. . . . I am no longer the young, ignorant, disrespectful individual who stood before you thirteen years ago . . . ." (2012 Letter at 3, Dkt. No. 280.) Upon release, Snulligan plans to live in Chicago with his mother and brother. Snulligan's mother is arthritic and would benefit from his support and assistance. (*See* Mother's Letter, Mot., Ex. G, Dkt. No. 310-7.) Snulligan's children also live near Chicago and likely would benefit from his physical presence.

Finally, Snulligan asks the Court to waive the remaining balance of the $15,000 fine imposed at his sentencing in 2000. Although Snulligan has made payments while in prison, the fine has continued to accrue interest over time. Snulligan intends to find a job once he is released from prison but argues that the fine presents a serious financial hardship that will make his transition to society from prison more difficult. The First Step Act "§ 404(b) refers to imposing a reduced *sentence* and not just a term of imprisonment." *United States v. Sutton*, 962 F.3d 979, 983 (7th Cir. 2020). "The sentence includes not only the term of

- 17 -

imprisonment but also the term of supervised release and any fines." *Id.* The Court is sympathetic to the financial challenges Snulligan will face upon release and recognizes the hardship such a fine will pose to him. Thus, the Court reduces Snulligan's sentence to time served and waives the remaining balance of his $15,000 fine. All other conditions of his sentence remain intact.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendant Kevin Snulligan's Motion for a Sentencing Reduction (Dkt. No. 310). The Court reduces Snulligan's sentence to time served and waives the remaining balance of his $15,000 fine. All other conditions of his sentence remain intact.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 9/24/2020